USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 9/26/23 _____

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **TARA MANDATO,** | |
| **Plaintiff,** | **1:22-cv-04000** |
| **-against-** | **ORDER** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Tara Mandato ("Plaintiff" or "Ms. Mandato") brings this action challenging the Commissioner of Social Security's ("Commissioner" or "Defendant") final decision that Mandato was not entitled to Social Security disability benefits ("SSD") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). Plaintiff seeks reversal of the decision of the Commissioner, or in the alternative, that this Court remand the case to the Commissioner of Social Security for further administrative proceedings. Defendant moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Upon review of the parties' submissions and for the reasons stated below, Plaintiff's motion to remand is **DENIED** and Defendant's cross-motion for judgment on the pleadings is **GRANTED**.

## BACKGROUND

### I. Procedural Background

On May 17, 2019, Plaintiff filed an application for SSI and disability insurance benefits, alleging a disability onset date of November 1, 2018. R. at 13.[1] Plaintiff's alleged impairments included arthritis of the knee and hips and herniated discs in her lower back. *Id*. at 64. The Social

---

[1] "R." refers to the administrative record prepared by the Social Security Administration. Pagination follows original pagination in the Certified Administrative Record.

Security Administration denied Plaintiff's claims on August 29, 2019, and again upon reconsideration on February 13, 2020. *Id*. at 13. Ms. Mandato filed a written request for a hearing before an Administrative Law Judge ("ALJ") and a hearing was held on July 20, 2021. *Id*. at 12-13, 23. Ms. Mandato appeared, by telephone, at the hearing, represented by Jessica Lindhorst. *Id*. at 32. Following the telephone hearing, the ALJ issued a decision on August 2, 2021, denying Plaintiff's claims. *Id*. at 10. Ms. Mandato requested review of the ALJ's decision by the Appeals Council. R. at 287-288. On March 22, 2022, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner of Social Security. *Id*. at 1.

Ms. Mandato filed a complaint in this Court on May 16, 2022, requesting that the Court reverse the decision of the Commissioner and grant her maximum disability insurance and/or SSI benefits, or in the alternative, remand the case to the Commissioner for further administrative proceedings. Compl., ECF No. 1. On January 31, 2023, Plaintiff moved for a remand of her case for further administrative proceedings. Pl.'s Mot., ECF No. 16. The Commissioner cross-moved for judgement on the pleadings on March 30, 2023. Def.'s Mot., ECF No. 19. On April 23, 2023, Plaintiff replied to Defendant's cross-motion in further support of her motion for remand for further administrative proceedings. Reply, ECF No. 21.

## II. Factual Background

### A. Non-Medical Evidence

#### 1. Plaintiff's Background

Ms. Mandato was 42 years old at the onset of her alleged disability on November 1, 2018. R. at 54. She completed high school and one year of nursing school but has no other vocational training. *Id*. at 36. At the time of the hearing on July 20, 2021, Ms. Mandato testified that she lived

in a mobile home with her immediate family: her husband and two children (a son who was 19 years old, and a daughter who was 11). *Id*. Plaintiff's husband was an independent contractor and out of work due to the COVID-19 pandemic. *Id*. Ms. Mandato stated that her husband was collecting unemployment insurance and that she was insured through Medicare. *Id*. at 37. Prior to the onset of her alleged disability, Ms. Mandato worked as a front-end supervisor at Hannaford Supermarket from September 2008 to June 2015, and as an insurance agency receptionist at William A. Smith & Son from September 2008 to July 2010. *Id*. at 393. She has not maintained gainful employment since 2015. *Id*. at 393.

### 2. Plaintiff's Testimony and Alleged Disability

Ms. Mandato applied for disability benefits due to arthritis in her knees and hips, and herniated discs in her lower back. R. at 333. Plaintiff testified that she can only walk a "tenth of a mile" before needing to rest and she cannot get around a grocery store. *Id*. at 37. She also testified that she could walk down her street and back, although it is "not very far." *Id*. at 37, 38. Plaintiff stated that she can sit comfortably for 20 to 25 minutes but cannot sit through a TV show without needing to stand to relieve pain. *Id*. at 38. Ms. Mandato claimed that she cannot stand for longer than 10 minutes before needing to rest. *Id*. Plaintiff testified that she cannot pick items up off the floor, although she may be able to pick up a jug of milk. *Id*. She stated that she can lift light items, like a loaf of bread, but cannot move them across a grocery store scanner like she did in her previous employment. R. at 38. Moving items in her possession causes her to experience back pain. *Id*.

Plaintiff stated that she experiences more bad days with her pain than good, and she is typically "laid up" for two to three days a week. *Id*. Ms. Mandato takes several medications to treat her pain but asserted that the medication does not really help, and she cannot tolerate a higher

3

dosage. *Id*. at 40, 41. Plaintiff also claimed to experience fogginess, dizziness, and nausea as side effects of the medication. R. at 40.

### 3. Plaintiff's Disability Report

According to the Plaintiff's Disability Report, Ms. Mandato alleged that she suffers from arthritis in the knees and hips, and herniated discs in her lower back. R. at 333. The report indicates that Plaintiff has not performed work after the alleged disability onset date of November 1, 2018. *Id*. Ms. Mandato stated that she was not taking any medications at the time the disability report was completed. *Id*. at 335.

### 4. Function Report

On July 1, 2019, Ms. Mandato completed a "Function Report. R. at 348. Plaintiff reported that her daily activities included laundry, cooking, cleaning, and giving her daughter a bath. *Id*. at 340. Ms. Mandato wrote that her alleged disability restricts her from going out and playing with her kids, being intimate with her husband, working, walking and sitting for long periods of time, riding a bike, hiking, and walking to see her daughter off the school bus. *Id*.  Plaintiff has difficulties getting dressed each day, bathing, and shaving because it is painful for her to bend, twist, sit, and stand. *Id*. She also struggles to sleep through the night. *Id*. Plaintiff claimed to complete some tasks like small loads of laundry, minor cleaning, small loads of dishes, and a weekly grocery trip. *Id*. at 341-342. Ms. Mandato reported that she does not go anywhere on a regular basis and does not participate in activities as often as she did before the alleged disability. *Id*. at 343-344. Additionally, she mentioned that her short-term memory is not good. *Id*. at 346.  Plaintiff claimed that all activities bring her pain and that she is in pain all day. *Id*. at 347. At the time, she indicated that she takes Methocarbamol three times a day and Advil and Aleve for the pain as needed. *Id*. at 347.

**B.  Medical Evidence**

**1. Plaintiff's Medical Evidence in 2018**

Ms. Mandato visited Crystal Run urgent care on October 26, 2018. R. at 429. Plaintiff complained of moderate to severe right hip and right knee pain that is aggravated by movement. *Id*. The visit report mentioned that Ms. Mandato had a party and did "a lot of work" 2 days prior to the start of her pain. *Id*. A review of systems revealed that Plaintiff was positive for joint pain and joint swelling. *Id*. at 431. A physical exam concluded that Ms. Mandato had right knee effusion and right hip pain with internal rotation. *Id*. Further diagnostic evaluations were ordered, and ibuprofen was recommended for pain. *Id*. Ordering provider, Dr. Saed Qaqish, reported that Ms. Mandato's X-ray showed mild degenerative sclerotic changes in her right hip. *Id*. at 434. An X-ray of Plaintiff's right knee observed a moderate joint effusion. *Id*. at 435.

In a consult note dated October 28, 2018, Dr. Justin Conway documented Plaintiff's visit to Crystal Run urgent care for acute onset right hip and knee pain. R. at 423. Following an examination of Ms. Mandato's hip, Dr. Conway wrote that gait was normal, but Plaintiff experiences groin pain with internal rotation and pain with forced internal rotation and flexion of the hip. *Id*. at 425-426. He also noted that sensation was intact. *Id*. at 426.  Upon examination of her right knee, Dr. Conway noted that Plaintiff had a neutral alignment, antalgic gait, mild effusion, and medial/lateral joint line tenderness. *Id*. He did not note any other abnormalities relating to Ms. Mandato's right knee. *Id*. Dr. Conway ordered an X-ray of Plaintiff's right hip and knee. Plaintiff was assessed as having right hip pain, acute pain of right knee, Lyme arthritis of the knee, type 2 diabetes mellitus without complication, and chronic midline low back pain without sciatica. *Id*. at 427. Dr. Conway found that

5

the labs indicated that Ms. Mandato's symptoms were caused by Lyme arthritis. R. at 427. He prescribed Plaintiff doxycycline for 28 days and directed her to take ibuprofen as needed. *Id*.

In an office visit report dated November 2, 2018, Dr. Justin Conway documented Plaintiff's visit to Crystal Run urgent care for right hip and knee pain. R. at 418-422. Dr. Conway examined Ms. Mandato and concluded that she was well appearing with no acute distress. *Id*. at 420. Dr. Conway commented that Plaintiff's right hip had a normal gait, passive and active ranges of motion were equal, and she did not experience pain with passive range of motion or while bearing weight. *Id*. at 420.  Dr. Conway documented that Ms. Mandato experienced groin pain with internal rotation and pain with forced internal rotation and flexion of the hip. *Id*. Dr. Conway also noted that Plaintiff did not experience pain with external rotation, resisted abduction, or crossbody adduction of the hip, among other tests that did not produce pain, popping or snapping. *Id*. Following a knee examination, Dr. Conway found Ms. Mandato's right knee to have a neutral alignment and normal gait. *Id*. at 421. He noted mild effusion and medial/lateral joint tenderness, with a range of motion of 0-135 degrees. R. at 421. Dr. Conway found that Plaintiff has Lyme arthritis of the knee, and he was of the impression that the condition was improving. *Id*. He also assessed that Plaintiff experiences right hip pain. *Id*. He wrote that Ms. Mandato would take doxycycline for 28 days, as prescribed, and ibuprofen. *Id*.

### 2. Plaintiff's Medical Evidence in 2019

Ms. Mandato was referred for a spine MRI by Dr. Leila Boukhris. R. at 452. The results dated May 6, 2019, showed that Plaintiff had "vertebral hemangiomas", "left foraminal disc protrusion L4-5 level with associated nerve root impingement", "bilateral foraminal disc bulges L5-

S1 level with bilateral, right greater than left neural foraminal stenosis and possible associated nerve root impingement." *Id*. at 452-453. There was "no intrinsic spinal cord abnormality." *Id*. at 453.

Plaintiff saw Mitchell J. Korn, PT ("PT" or "physical therapist") on May 14, 2019, to participate in physical therapy. R. at 494. Documentation of the visit shows that Ms. Mandato was evaluated for her disc bulge L4-S1 at Dr. Boukhris' referral. *Id*. Plaintiff reported that she experienced loss of function, motion, pain, and suffered paresthesias due to her alleged injury. *Id*. PT noted that Plaintiff did not have paresthesias. *Id*. PT also found that Plaintiff's condition typically responds well to physical therapy interventions. *Id*. at 495. Plaintiff had an antalgic gait without assistive device, warmth and tenderness on touching of the central lumbar spine, muscle strength was "5/5" in bilateral lower extremities for all motor groups, abdominal strength was "N/A" due to severe pain, and "AROM" (active range of motion) was full in "B LE" (bilateral lower extremities) in all planes. R. at 494. Ms. Mandato also presented with objective impairments of "ROM" (range of motion) limitation, impaired balance and gait, pain, and functional deficits. *Id*. at 495. PT found that it was reasonable to expect Plaintiff to make significant, sustainable functional improvement and that rehab potential was good. *Id*.

Ms. Mandato continued with physical therapy appointments on May 16, 21, 23, and 28 of 2019. R. at 486-493. On May 16, 2019, PT assessed that Plaintiff appeared motivated and able to perform exercises correctly with no complaints of pain. *Id*. at 492. On May 21, 2019, PT found that Ms. Mandato was unable to walk or stand in place for greater than 15 minutes, and stairs were negotiated with railing. *Id*. at 490. Plaintiff could not lift greater than five pounds. *Id*. On May 23, 2019, PT still assessed Plaintiff as able to perform exercises correctly with no complaints of pain and found that her progress towards goals was good as was her tolerance to treatment. *Id*. at 488-

489. On June 4, 2019, Ms. Mandato was diagnosed with low back pain and "radiculopathy, thoracolumbar region." R. at 482. PT noted that Ms. Mandato was still unable to perform lifting/carrying greater than five pounds and that she could perform stairs with a railing. *Id*.

Plaintiff was seen for a follow up on back pain by Dr. Boukhris on June 4, 2019. R. at 444. Dr. Boukhris noted that Ms. Mandato was still experiencing lower back pain and that physical therapy was not working. *Id*. Plaintiff could not tolerate "NSAIDS" (nonsteroidal anti-inflammatory drugs) but agreed to try muscle relaxants. *Id*. If Ms. Mandato's condition did not improve, she would be referred to pain management. *Id*.

On July 18, 2019, Ms. Mandato was seen by endocrinologist Dr. Ahmad. R. at 503. He assessed her for Type 2 diabetes mellitus with hyperglycemia. *Id*. In a follow up appointment with Dr. Ahmad on September 23, 2019, he reported that Ms. Mandato had been well and that her blood sugars were reportedly good. *Id*. at 501 Dr. Ahmad noted that Plaintiff had been having back issues and had not been able to exercise. *Id*. On November 4, 2019, Dr. Ahmad reported that Ms. Mandato had been well but experienced nausea while taking Ozempic. *Id*. at 500.

### 3. Plaintiff's Medical Evidence in 2020

On February 5, 2020, Dr. Ahmad saw Ms. Mandato and documented that she had been tolerating a lower dosage of Ozempic and had not experienced nausea. R. at 498. Dr. Ahmad asked Plaintiff to increase her home glucose monitoring and to test her glucose before driving. *Id*. at 499. Ms. Mandato then saw Dr. Henry Lasky on May 14, 2020, for an EMG of her right and left lower extremities. *Id*. at 525-526. Dr. Lasky also performed a rheumatology evaluation. *Id*. at 527. Plaintiff described her symptoms as moderate and occurring daily. *Id*. Ms. Mandato stated that her symptoms are chronic and poorly controlled but relieved with muscle relaxants. *Id*. The MRI showed that

Plaintiff had a "broad-based disc bulge with mod[erate] to severe L4 radiculopathy and right more than left L5 radic with facet arthritis." R. at 527. Ms. Mandato was positive for fatigue, fever, ringing in ears, nausea, vomiting, back pain, joint pain, and joint swelling. *Id*. at 529. Her general physical exam results were normal, and she was found to have power "4/5" in both lower extremities. *Id*. Plaintiff had full range of motion of her hips without any pain. *Id*. at 530. Dr. Ahmad assessed that Ms. Mandato had "lumbosacral radiculopathy" and he discussed surgical and injection treatment options with Plaintiff, as well as weight loss. *Id*. Plaintiff was directed to start taking Cymbalta. *Id*. Dr. Ahmad also found that Ms. Mandato had "intervertebral disc degeneration of the lumbosacral region", fibromyalgia, type 2 diabetes mellitus without complication, without long-term use of insulin, and primary osteoarthritis involving multiple joints. R. at 530. Dr. Ahmad noted that Plaintiff's pinched nerves are probably the drivers of her initial pain, but he believed that she developed secondary fibromyalgia, complicating her condition. *Id*. He also wrote that he did not believe Ms. Mandato's osteoarthritis was responsible for most of her pain. *Id*.

On July 24, 2020, Ms. Mandato underwent a nerve conduction study for her back pain radiating to both lower extremities. R. at 536. The study revealed no evidence of lumbar radiculopathy or peripheral neuropathy at that time. *Id*. at 537. On August 7, 2020, Plaintiff had a telehealth consultation with Dr. Lasky to discuss medical marijuana as a treatment option for pain management related to fibromyalgia, and Dr. Lasky found that Plaintiff met the qualifying criteria condition of chronic pain to receive a medical marijuana certification. *Id*. He opined that the condition he was requesting certification for included chronic pain related to fibromyalgia, with symptoms including severe pain that decreases functionality and limits activities of daily living. R. at 517.

9

Ms. Mandato saw Dr. Lasky for a follow-up on August 18, 2020. R. at 510. Plaintiff reported that Cymbalta was helping a bit, but she had nausea with it and was advised to take it with ginger, then referred for medical marijuana. *Id.* On September 22, 2020, Ms. Mandato followed up again with Dr. Lasky. *Id*. at 506. Plaintiff reported that she experienced a little less nausea with a lower dose of Cymbalta and that medical marijuana helps. *Id*.

### 4. Plaintiff's Medical Evidence in 2021

Ms. Mandato was seen by Dr. Leila Boukhris on January 12, 2021. R. at 612. Dr. Boukhris noted that Plaintiff was taking medical marijuana, Metformin, Ozempic, Duloxetine, Methocarbamol, and Naprosyn. *Id.* The doctor also noted that Plaintiff was not attending pain management or physical therapy because of her pain. *Id.* Dr. Boukhris found that Ms. Mandato had bilateral sciatica, pain in bilateral hips, knees, and lower back, and referred her to an orthopedist for chronic low back pain and sciatica. *Id.* at 613. Plaintiff was seen by Dr. Alan Gotesman of Northeast Orthopedics on February 16, 2021, for an initial evaluation of her low back pain. *Id.* at 649. Plaintiff shared that she was diagnosed with fibromyalgia and has been on multiple medications. R. at 649. Dr. Gotesman did not find any abnormalities in Plaintiff's review of systems but noted that she experiences lower back pain. *Id*. Dr. Gotesman noted that Plaintiff walks with a mildly antalgic gait. *Id*. at 650. Her lumbar spine has mild tenderness in the midline and paraspinal area and there is significant tightness in the hamstrings. *Id.* Dr. Gotesman also noted that Ms. Mandato has "5/5" strength in her lower extremities. *Id*. Plaintiff's January 2020 MRI of the lumbar spine showed multilevel degenerative disc disease with mild disc bulging. R. at 650. Dr. Gotesman asked Ms. Mandato to follow up in six weeks and prescribed her to physical therapy for the lumbar spine. *Id.*

On March 9, 2021, Ms. Mandato saw Ronald Alley, PT, DPT ("PT" or "physical therapist") for an initial evaluation. R. at 685. Plaintiff reported progressive onset of lower back pain, worsening recently over the past few months. *Id*. Dr. Alley wrote that the impairments for Ms. Mandato's condition typically respond well to physical therapy interventions. *Id*. at 686. He found that Plaintiff presented with objective impairments of range of motion limitation, muscle weakness, poor neuromuscular motor control, gait, transfer, pain, and functional deficits. *Id*. Considering Ms. Mandato's co-morbidities and complexities, Dr. Alley opined that it is reasonable to expect her to make significant sustainable, functional improvements by participating in skilled therapy. *Id*.

Ms. Mandato saw PT Alley for physical therapy on March 11, 16, 18, 23, 25, and 30th of 2021. R. at 683-673. On March 11, 2021, PT assessed that Plaintiff appeared motivated and was able to perform exercises correctly with difficulty due to pain. *Id.* at 683. He opined that her progress toward goals was good and her tolerance to treatment was good. *Id*. On March 23, 2021, Plaintiff was able to walk for ten minutes and could negotiate one flight of stairs reciprocally. *Id*. at 677. On March 25, 2021, Dr. Alley updated Plaintiff's range of motion in the medical chart and noted that her gait, without assistive device, was moderately antalgic. *Id*. at 675. On March 30, 2021, Plaintiff experienced intermittent buckling of her left hip. *Id.* at 673. Dr. Alley noted that Ms. Mandato could walk for ten minutes but with intermittent/unpredictable left hip instability, and she could negotiate one flight of stairs reciprocally but with intermittent difficulty. *Id*.

On April 6, 2021, Ms. Mandato saw Dr. Gotesman for a follow up regarding her lower back pain. R. at 652. Plaintiff reported continued lower back pain, radiating down the right leg, and that she was completing physical therapy with mild improvements. *Id*. Dr. Gotesman found that Plaintiff walked with a mildly antalgic gait and that she experienced mild tenderness in the midline and

paraspinal area with negative straight leg raise. *Id*. at 653. He also noted that she had significant tightness in her hamstrings with "5/5" strength in her lower extremities. *Id*. Dr. Gotesman assessed Ms. Mandato with lumbar spondylosis and ordered that she get an MRI. *Id*. Plaintiff was directed to continue with therapy. *Id*.

On April 20, 2021, Ms. Mandato returned to physical therapy. R. at 656. Dr. Alley noted that she could walk for ten minutes with intermittent/unpredictable left hip instability and was able to negotiate one flight of stairs reciprocally with intermittent difficulty. *Id*. Dr. Alley assessed that impairments for Plaintiff's condition typically respond well to physical therapy interventions. *Id*. at 657. Ms. Mandato presented with continued objective impairments of range of motion limitation, muscle weakness, poor neuromuscular motor control, gait, transfer, pain and functional deficits. *Id*. Plaintiff was instructed to be seen three times a week for six weeks, for a total of 18 visits. R. at 657. On May 6, 2021, Plaintiff attended physical therapy and reported one instance of left hip buckling earlier that day. *Id*. at 665. Dr. Alley noted that Plaintiff could walk for ten minutes, sit for 30 minutes, and was able to negotiate one flight of stairs reciprocally but with intermittent difficulty. *Id*.

### C. Opinion Evidence

#### 1. Rita Figueroa, M.D. – Internal Medicine Consultative Examination

On July 29, 2019, Rita Figueroa, M.D. completed an internal medicine examination on Ms. Mandato on behalf of the Social Security Administration, following a referral by the Division of Disability Determination. R. at 461. Dr. Figueroa reported that Plaintiff was in no acute distress and had an antalgic gait. *Id*. at 463. Plaintiff reported back pain while walking on heels and toes and her squat was at 75%. *Id*. Ms. Mandato's stance was normal, she used no assistive devices, and she was

able to rise from a chair without difficulty. *Id*. The musculoskeletal exam revealed that Plaintiff's cervical spine showed "full flexion", "extension", "lateral flexion bilaterally", and "full rotary movement bilaterally." *Id*. The lumbar spine showed "flexion of 35 degrees", "extension of 15 degrees", "full lateral flexion bilaterally", but slowly, and "full rotary movement bilaterally", but slowly. *Id*. Ms. Mandato's straight leg raise was positive on the right at 75 degrees and the left at 45 degrees, but not confirmed in the sitting position. R. at 464. Her hips showed "flexion extension of 65 degrees bilaterally, interior rotation right of 40 degrees and left 20 degrees, exterior rotation right 15 degrees and left 25 degrees, backward extension 15 degrees bilaterally, abduction 20 degrees bilaterally, adduction 20 degrees bilaterally." *Id*. Plaintiff's knees showed "flexion extension of 85 degrees bilaterally" and her left knee clicked. *Id*. Ms. Mandato's joints were stable and nontender and there was no evidence of redness, heat, swelling, or effusion. *Id*.

Dr. Figueroa diagnosed Plaintiff with bilateral hip and knee pain, chronic low back pain, hypertension, diabetes type 2, history of childhood asthma and a history of Lyme disease. R. at 464. The prognosis was fair. *Id*. Dr. Figueroa found that Ms. Mandato would have severe limitation to kneeling, squatting, crawling, and being up and down ladders. *Id*. at 465. Plaintiff would have moderate limitation to prolonged walking and standing, as well as a moderate to severe limitation to repetitive bending, lifting, and carrying. *Id*. Dr. Figueroa explained that Ms. Mandato should avoid pulmonary irritants. *Id*.

### 2. Paul Mercurio, M.D. – Internal Medicine Consultative Examination

On January 17, 2020, Paul Mercurio, M.D. completed an internal medicine examination of Ms. Mandato on behalf of the Social Security Administration, following a referral by the Division of Disability Determination. R. at 473. Dr. Mercurio observed that Plaintiff was in no acute distress

and walked with a slow, antalgic gait. *Id*. at 475. Ms. Mandato was able to put pressure on her heels and toes but could only do a fourth of a full squat. *Id*. Plaintiff could rise from a chair without difficulty. *Id*. Dr. Mercurio's musculoskeletal exam found that Plaintiff's cervical spine showed "full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally." *Id*. at 476. Her lumbar spine showed "flexion limited to 60 degrees, full extension, full lateral flexion bilaterally, and full rotary movement bilaterally." *Id*. Ms. Mandato showed full range of motion in her hips, knees, and ankles bilaterally. R. at 476. Her joints were stable and nontender with no evidence of redness, heat, swelling, or effusion. *Id*. Ms. Mandato had "5/5" strength in her upper and lower extremities. *Id*.

Dr. Mercurio diagnosed Plaintiff with chronic back pain, chronic bilateral hip pain, chronic bilateral knee pain, diabetes mellitus type 2, history of Lyme disease, and asthma. *Id*. at 476-477. Ms. Mandato's prognosis was fair. *Id*. at 477. Dr. Mercurio opined that Plaintiff would have mild limitation for prolonged sitting and standing. *Id*. Plaintiff would have moderate limitation for prolonged walking or repetitive climbing of stairs; she would have marked limitation for repetitive bending, lifting, carrying, or kneeling. R. at 477. Ms. Mandato would have limitation for reaching or handling objects and should be limited from environments where she could be exposed to respiratory irritants. *Id*.

### 3. John Kwock, M.D. – State Agency Medical Consultant Testimony

At Ms. Mandato's hearing on July 20, 2021, Dr. John Kwock testified as a medical expert. R. at 41. Dr. Kwock read Plaintiff's file and formed an opinion on her medical condition *Id*. at 42. Dr. Kwock testified that there was sufficient objective medical evidence to allow him to form opinions about the nature and severity of Ms. Mandato's impairments. *Id*. He affirmed that Plaintiff

had medically determinable musculoskeletal impairments, including degenerative disc and degenerative joint disease present in the lumbar spine and mild degenerative joint disease present in the right hip joint. *Id*. at 43. Dr. Kwock cited to exhibits 2-F/9, 8-F/7, 1-F/17, and 8-F/6 in the record to support his testimony. *Id*. Dr. Kwock opined that the impairments would not singularly nor in combination meet or equal a listing for social security benefits. *Id*. While recognizing that Ms. Mandato does have limitations, Dr. Kwock testified that her record still supported a light work exertional level. R. at 43. He believed the Plaintiff could lift and carry up to ten pounds on a frequent basis, and up to 20 pounds on an occasional basis. *Id*. at 43-44. Dr. Kwock stated that the Plaintiff could sit for six out of eight hours of a workday and walk for six out of eight hours of a workday. *Id*. at 44. Dr. Kwock believed that Ms. Mandato would have no limitation to overhead reaching, lateral reaching, handling, fingering, feeling, pushing, and pulling. *Id*. He found that Plaintiff would have no limitations of pushing the operations of pedal levers with her left foot but could only perform that action frequently with her right foot. *Id*. Dr. Kwock testified that Plaintiff could climb stairs, ramps, and the like, and balance, kneel, crawl, on a frequent basis. *Id*. Ms. Mandato could only climb ladders, scaffolds, or stoop and crouch on an occasional basis. R. at 44. Dr. Kwock believed that Plaintiff could work in high, exposed, unprotected heights and in proximity to heavy or moving machinery on a frequent basis. *Id*.

### 4. Kathleen Doehla – Vocational Expert Testimony

At Plaintiff's 2021 hearing, the ALJ heard testimony from vocational expert ("VE") Kathleen Doehla, who testified that Plaintiff's past work as a supermarket supervisor was medium-exertion skilled work, per the Dictionary of Occupational Titles ("DOT"). R. at 49. Additionally, the VE testified that the role of a cashier, which Ms. Mandato sometimes performed as part of her

supervisor job, was light-exertion skilled work, per the DOT. *Id*. The exertion level of Ms. Mandato's part time job as an insurance agency receptionist was excluded. *Id*.

During the hearing, the VE responded to various employment hypotheticals posed by the ALJ for a person of the same age, education, and employment background as Plaintiff at different functional capacities. Id. at 49-51. For the first hypothetical, the ALJ asked whether Plaintiff's previous job could be performed by a claimant that could lift and carry ten pounds frequently, 20 pounds occasionally, sit for six hours with the ability every half-hour to change position without requiring a break for more than one to two minutes, stand and walk two hours each in an eight-hour workday, never climb ropes, ladders, or scaffolds, that must avoid exposure to unprotected heights, and dangerous machinery, that could occasionally balance, bend, and stoop, but could never crouch, crawl, or kneel, and would be off task for five percent of the workday due to the side effects of medications and pain. Id. at 49-50. The VE responded that none of Ms. Mandato's past work would be available under these circumstances. R. at 50. In the second hypothetical, the ALJ asked whether there would be jobs in the national economy for an individual of the same age, education, and work experience as the claimant with the same abilities and limitations stated previously. *Id*. The VE testified that there would be three jobs available, that of a table worker, a document preparer, and a sorter. *Id*. Each was a sedentary-exertion level job with approximately 38,000, 125,000 and 39,000 positions in the nation, respectively. *Id*. The VE testified that while off task tolerance is not mentioned in the DOT, she was answering based on her professional experience. *Id*. at 51. Ms. Mandato's representative then asked the VE whether, for the three jobs mentioned, a job would still be available for a claimant that was absent one time a week due to pain related symptoms. *Id*. The

VE testified that, based on her experience, one absence per week would preclude any competitive employment. R. at 51.

## LEGAL STANDARD

### I.  Standard of Review

A district court may review the Commissioner's determination under 42 U.S.C. § 405(g) to determine whether there is "substantial evidence" supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence, as set forth in § 405(g), is "more than a mere scintilla" and requires "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). The "substantial evidence" standard is even more deferential than the "clearly erroneous" standard. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would *have to conclude otherwise*." *Id*. (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). Thus, the Court "may not substitute its own judgement for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Briody v. Commissioner of Social Security*, No. 18-CV-7006 (ALC), 2019 WL 4805563, at *7 (S.D.N.Y. Sep. 30, 2019) (internal quotation marks and citations omitted)). However, the Court "will not defer to the Commissioner's determination if it is the product of legal error." *DiPalma v. Calvin*, 951 F. Supp 2d 555, 566 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

## II. Determining Disability

A plaintiff has a disability if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). The disability must be serious enough "that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423 (d)(2)(A).

Further, a claimant's subjective complaints about their symptoms are, alone, not enough to establish a disability. 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 96-7p. These complaints must be corroborated by a medical condition that reasonably could be expected to result in the conditions that, considered with all other evidence, demonstrate that the claimant is disabled. *Id*. Where subjective claims are not completely supported by the Administrative Record, the ALJ will consider the frequency and duration of the symptoms, precipitating and aggravating factors, the effect of medication, treatment, functional restrictions, and the claimant's daily activities. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

"To evaluate a disability claim, the Commissioner must apply the five-step sequential process set forth in 20 C.F.R. § 416.920." *Hernandez v. Comm'r of Soc. Sec.*, No. 21-CV-5405 (WFK), 2023 WL 4209622, at *2 (E.D.N.Y. June 27, 2023). (1) First, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity. (2) If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. (3) If the claimant

suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which equals one of those listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him *per se* disabled. (4) Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. (5) Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform. *Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013) (alterations omitted).

The Commissioner only has the burden to prove the fifth step, with the plaintiff bearing the burden for the preceding steps. *Id*. "In the ordinary case, the Commissioner meets his burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids)." *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004), *amended in part on the other grounds on reh'g*, 416 F.3d 101 (2d Cir. 2005) (quoting *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)).

## DISCUSSION

### I. The ALJ's Decision

At step one of the ALJ's five-step evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. R. at 15.

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, right hip degenerative joint disease, obesity, and hypertension. R. at 15. The ALJ found that those medically determinable impairments significantly limit Ms. Mandato's ability to perform basic work activities. *Id*. at 16. Pursuant to SSR 19-2p, the ALJ considered the functional limitations resulting from obesity in his residual functional capacity ("RFC") assessment. *Id*. The ALJ

determined that Plaintiff's following conditions were non-severe: diabetes, right knee osteoarthritis and Lyme's disease. *Id*. The ALJ noted that endocrinology records showed that Plaintiff's diabetes is well controlled and that she only has transient symptoms related to arthritis of the right knee. *Id*. at 16.

According to the ALJ, the evidence did not include any complications or continuing treatments for these impairments. *Id*. The ALJ noted that Ms. Mandato's history of Lyme disease did not significantly limit her ability to perform basic work-related activities. *Id*. Plaintiff reported a history of asthma, but the ALJ found that the record did not indicate a diagnosis, prescribed medication, or respiratory abnormality, and therefore found that the impairment was non-severe. R. at 16. The ALJ also found that Ms. Mandato's diagnosis of fibromyalgia was not adequately supported by the medical evidence. *Id*. He found that, except for a single May 2020 examination, the record lacked examinations indicative of tender points and that Plaintiff did not have documentation of repeated manifestations of at least six fibromyalgia symptoms, signs, or conditions. *Id*. Therefore, the ALJ found that despite the diagnosis of fibromyalgia, the condition was non-severe. *Id.* Plaintiff alleged that she experienced bilateral knee pain and a non-specific phobia, yet the ALJ found that no physician or other acceptable medical source in the record diagnosed these conditions. *Id*. The ALJ noted that "no symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints are, unless there are medical signs and lab findings demonstrating the existence of a medically determinable impairment." *Id*. Therefore, the ALJ found that these complained of conditions were not medically determinable impairments. *Id*. The ALJ considered all of Ms. Mandato's medically and non-medically determinable impairments when assessing her RFC. *Id*.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). R. at 17. The ALJ noted that Ms. Mandato had never used a walker, bilateral canes or crutches, or a mobility device that involves the use of both hands and that she lacks the inability to use one upper extremity to complete work-related activities. *Id*. The ALJ found that his decision was consistent with Dr. Kwock's medical expert testimony that Plaintiff's musculoskeletal impairments singularly or in combination did not meet or equal a listing. *Id*. The ALJ also found that Ms. Mandato's hypertension and diabetes did not meet or equal any of the applicable Listings. *Id*.

At step four, the ALJ found that Plaintiff has the RFC to perform light work[2] with the following limitations: Plaintiff can sit for six hours with the ability every half hour to change position without requiring a break of more than 1-2 minutes. R. at 17. Ms. Mandato can never crouch, crawl, kneel or climb ropes, ladders or scaffolds, but can occasionally balance, bend, and stoop. *Id*. Plaintiff must avoid exposure to unprotected heights and dangerous moving machinery, and she would be off task 5% of the workday due to the side effects of medications and pain. *Id*. In making this determination, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. *Id*. at 18. However, the ALJ found that Ms. Mandato's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id*. He also found that Plaintiff is unable to perform any past relevant work. *Id*. at 21.

---

[2] Light work is defined as "work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds…it requires a good deal of walking or standing, or [] it involves sitting most of the time with some pushing and pulling of arm or leg controls." C.F.R. § 404.1567.

At step five, the ALJ considered Ms. Mandato's age, education, work experience, and RFC, as well as the Medical-Vocational Guidelines set forth in 20 CFR Part 404, Subpart P, Appendix 2. R. at 22. The ALJ found that there were a "significant number" of jobs in the national economy that Plaintiff could perform. *Id*. The ALJ listed three occupations: table worker, document preparer, and sorter. *Id*. Ultimately, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. *Id*. at 23.

## II.   The ALJ's Decision Was Supported by Substantial Evidence

Plaintiff argues that the ALJ (1) failed to resolve inconsistencies in the medical evidence of record and (2) failed to develop the medical evidence to support his RFC findings. Pl.'s Mot. at 17. She also claims that (3) the medical opinion testimony by Dr. Kwock did not cite to medical or other evidence of record to support his RFC opinion, *id*. at 14, (4) she is incapable of either light or sedentary work, *id*. at 20-21; and (5) the ALJ's RFC requirements could not be fulfilled by two out of the three jobs listed by the vocational expert. Reply. at 7. The Court concludes that the ALJ's decision was supported by substantial evidence.

### A.   The ALJ Adequately Developed Medical Evidence to Support His RFC Findings

"The RFC is an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Smith v. Comm'r of Soc. Sec.*, No. 20-CV-08547 (JCM), 2022 WL 421136, at *13 (S.D.N.Y. Feb. 11, 2022). (internal quotation marks omitted). The RFC determination is reserved to the Commissioner, and the ALJ considers a claimant's physical abilities, mental abilities, symptomology, and any pain or limitations that could interfere with work activities when making a final RFC determination. *Id*. The ALJ is "entitled to weigh all the evidence available to make an RFC finding that is consistent with the record as a

whole"; there is no requirement that the ALJ's determination "perfectly correspond with any of the opinions of medical sources cited in his decision." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Moreover, the ALJ has the discretion to resolve "genuine conflicts in the medical evidence." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). "While the opinions of a treating physician deserve special respect, they need not be given controlling weight where they are contradicted by other substantial evidence in the record." *Id*.

Plaintiff argues that the ALJ (1) failed to resolve inconsistencies in the medical evidence of record and (2) failed to develop the medical evidence to support his RFC findings. Pl. Mot. at 17. The Court disagrees. As stated in his opinion, the ALJ's RFC assessment considered all evidence in the record, including Plaintiff's symptoms, treatment evidence, state agency consultant opinions and the opinion of the orthopedic medical expert. R. at 17-21. Ms. Mandato asserts that there is no medical or other evidence in the record that shows she can sit for six hours per workday even while changing positions every half hour, Pl. Mot. at 17, or that she would be off task for 5% of an eight-hour workday. *Id*. at 19; *see* R. at 17. However, based on the medical record's consistent findings that Plaintiff is not restricted from certain activities, an ALJ may properly conclude that a Plaintiff is capable of particular types of work.[3] *Smith*, 2022 WL 421136 at *13. ("An ALJ may properly conclude that Plaintiff is capable of medium level work based on the record's consistent normal findings, even where the consultative examiner does not specifically address Plaintiff's ability to lift and carry.")

---

[3] The ALJ accounted for the effects of pain and medication when finding that Plaintiff would be off task for 5% of the workday. R. at 21. Courts in this Circuit have found that it is within the ALJ's discretion to "assess limitations more severe than those supported by the medical evidence of record in deference to Plaintiff's testimony." *Andre v. Kijakazi*, No. 20-CV-882F, 2021 WL 5074719 (W.D.N.Y. Nov. 2, 2021). The ALJ's inclusion of off task time in Plaintiff's RFC assessment is not grounds for remand. *Id.*, *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020).

As mentioned above, the substantial evidence standard is an incredibly deferential standard of review. *Brault*, 683 F.3d at 448. Once an ALJ finds facts, the Court can reject them "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448.

In his RFC determination, the ALJ found the opinion of consultative examiner Dr. Figueroa to be partially persuasive. R. at 19. The ALJ found that Dr. Figueroa's assessment that Plaintiff had a severe limitation for squatting was not supported by the evidence showing Ms. Mandato could perform 75% of a full squat on exam. *Id*. He also found that restriction in respiratory irritants were based solely on Plaintiff's reported history of childhood asthma and were not supported by or consistent with Plaintiff's normal respiratory findings on examination or by treating physicians. *Id*. Otherwise, the ALJ found that Dr. Figueroa's opinion was persuasive and consistent with Ms. Mandato's symptoms, and the conservative treatment indicated in her medical records. *Id*. The ALJ found Dr. Mercurio's consultative opinion partially persuasive as well. *Id*. at 20. The ALJ stated that Dr. Mercurio's assessment was inconsistent with Plaintiff's full range of motion of her bilateral upper extremities, full grip strength, and intact hand and finger dexterity, which Dr. Mercurio noted during his examination. R. at 20. The ALJ found that Dr. Mercurio's other opinions were persuasive, and consistent with the negative to mild findings on imaging and Ms. Mandato's conservative course of treatment. *Id*. The Court concludes that the ALJ exercised his discretion to address inconsistencies in the medical opinions of record and properly cited to the medical evidence to support his RFC determination.

It is a well-established rule in the Second Circuit that, unlike a judge in a trial, the social security ALJ must affirmatively develop the record in light of the non-adversarial nature of a benefits proceeding. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). Whether an ALJ has fulfilled their

duty to develop the record is fact specific, but in cases where the record contains no substantive gaps, an ALJ discharges their duty when they enable the claimant's attorney to submit additional records. *Tashawna H. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0380 (JJM), 2021 WL 2801102, at *3 (W.D.N.Y. July 6, 2021). An ALJ has developed the administrative record when he has agreed to hold the record open to allow Plaintiff's attorney to obtain additional records, and when neither Plaintiff nor his attorney have identified that any records may be missing and have not notified the ALJ that they were having difficulty obtaining records that may be missing. *Id.* (quoting *Moody v. Comm'r*, No. 6:19-cv-6168-DB, at *13 (W.D.N.Y. June 18, 2020). At Ms. Mandato's July 2021 hearing, the ALJ asked Plaintiff's counsel if there were any objections to the relevance of documents in the record. R. at 34. Plaintiff's counsel testified that there were no objections to the documents in the record, and when asked if the medical record was complete, she answered affirmatively. *Id.* The Court finds that the ALJ properly developed the medical record.

As for Plaintiff's claim that the medical opinion testimony by Dr. Kwock did not cite to medical or other evidence of record to support his RFC opinion, the Court finds that his assessment was supported by the medical evidence of record. At Plaintiff's hearing before the ALJ, Dr. Kwock testified that he reviewed Ms. Mandato's medical file, including Exhibits 1-20F introduced into the record, and that he listened to her testimony. R. at 42. Plaintiff's counsel did not object to Dr. Kwock testifying as a medical expert. *Id.* at 41. Dr. Kwock explicitly referred to exhibits in the medical record when assessing Plaintiff's medically determinable impairments. *Id.* at 43. The ALJ properly relied on Dr. Kwock's medical opinion to determine Plaintiff's RFC; the fact that Dr. Kwock was not Ms. Mandato's treating physician does not preclude the ALJ from relying on his expert

assessment. *See Heagney-O'Hara v. Comm'r of Soc. Sec.*, 646 F. App'x 123, 126 (2d Cir. 2016) (summary order).

### B. Plaintiff is Capable of Light or Sedentary Work and the Vocational Expert's Testimony Supports the ALJ's Finding That Plaintiff Could Perform a Significant Number of Jobs in the National Economy

The ALJ determined that there were a significant number of jobs in the national economy that Plaintiff could perform: a table worker, sorter, and document preparer. In coming to this conclusion, the ALJ relied on Ms. Doehla's vocational expert testimony. R. at 49-52. Plaintiff argues that (1) she is incapable of light or sedentary work, Pl.'s Mot. at 20, and (2) that the ALJ's RFC requirements could not be fulfilled by the jobs of a table worker and sorter. Reply at 7. The Court disagrees.

The Court finds that the ALJ properly concluded that Ms. Mandato was capable of light work after he fully considered the medical opinions in Plaintiff's record and the administrative medical findings. The ALJ found that there were no opinions from treating or examining physicians indicating that Plaintiff was disabled. R. at 21. He also found that Plaintiff's physical therapy and medication management had been generally conservative, supporting his findings that Plaintiff is not disabled and has the RFC to perform light work. *Id*. at 21-23.

Courts within the Second Circuit have held that mild to moderate limitations may be consistent with light work. *See e.g.*, *White v. Berryhill*, 753 F. App'x 80, 82 (2d Cir. 2019) (summary order) (light work RFC based on opinion that claimant had moderate limitations in, for example, standing and sitting); *Lewis v. Colvin*, 548 F. App'x 675, 677 (2d Cir. 2013) (summary order) (assessment of mild limitations for prolonged sitting, standing, and walking supported determination that claimant could perform light work); *Josielewski v. Berryhill*, No. 15-CV-728, 2018 WL 903471,

at *5 (W.D.N.Y. Feb. 15, 2018) (moderate to marked limitation for prolonged sitting is consistent with a finding that a claimant can perform sedentary work); *Figgins v. Berryhill*, No. 15-CV-6748, 2017 WL 1184341, at *8 (W.D.N.Y. March 29, 2017) (Court affirmed RFC for light work, which was based, in part, on consultative examiner's opinion that plaintiff would have moderate-to-severe limitations in standing, walking, squatting, bending, and lifting); *Vargas v. Astrue*, No. 10-CV-6306, 2011 WL 2946371, at *12 (S.D.N.Y. July 20, 2011) (finding "moderate limitations for lifting, carrying, handling objects, and climbing stairs" consistent with RFC for full range of light work).

The Court also finds that the ALJ properly relied on the VE's testimony to provide jobs in the national economy that Plaintiff can perform given her RFC and specific limitations.[4] The Commissioner "has the burden of showing that there is work in the national economy that claimant can do" despite her functional limitations, and "[i]n so doing, an ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence...and accurately reflect the limitations and capabilities of the claimant involved." *Hernandez v. Comm'r of Soc. Sec.*, No. 21-CV-5405 (WFK), 2023 WL 4209622 at *5 (E.D.N.Y. June 27, 2023) (cleaned up). In relevant part, "SSA Policy Interpretation Ruling 00-4p which 'governs the Commissioner's assessment of whether any particular job can accommodate a given claimant's physical limitations,'" *id.* (quoting *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 91 (2d Cir. 2019), provides that "occupational evidence provided by a [vocational expert]

---

[4] Plaintiff argues that the jobs of both a table worker and sorter involve conveyer belt work, per the DOT, and therefore do not accommodate her need to take "periodic pauses" due to her condition and as specified in the ALJ's RFC. Pl.'s Mot. at 21. By using the term, "periodic pauses", the Court assumes that Plaintiff is referring to the ALJ's RFC determination that allows her to "sit for six hours with the ability every half hour to change position without requiring a break of more than one to two minutes... and ...be off task 5% of the workday due to the side effects of medication and pain." R. at 17. Plaintiff also argues that the ALJ's RFC hypothetical was not supported by substantial evidence, so the VE's testimony cannot be relied upon for the ALJ's overall determination. Pl.'s Mot. at 21. The Court disagrees.

…generally should be consistent with the DOT." *Id.* "If the Commissioner does consider the testimony of [vocational] experts…she must be alert to the possibility of apparent unresolved conflicts between the testimony and the Dictionary." *Lockwood*, 914 F.3d 87, 92 (cleaned up). "[T]he Commissioner has an affirmative responsibility to ask about any possible conflict…and to elicit a reasonable explanation for [any such] conflict before relying on the [vocational expert's testimony]." *Id.* "The ALJ's duty to resolve conflicts between these two sources is satisfied if the ALJ questions the expert about the conflict and the expert provides a resolution, including by drawing upon their professional experience." *Hernandez*, 2023 WL 4209622 at *5.

Here, the ALJ asked the vocational expert to "assume the claimant is having to lift and carry ten pounds frequently, 20 pounds occasionally, is able to sit for six hours with the ability every half-hour to change position without requiring a break of more than one to two minutes. Stand and walk two hours each in an eight-hour workday. Never climb ropes, ladders, or scaffolds. Avoid exposure to unprotected heights, and dangerous machinery . . . occasionally balance, bend, stoop, never crouch, crawl, or kneel, and will be off task five percent of the workday due to the side effects of medications, and pain." R. at 50. In this hypothetical, the ALJ included Plaintiff's physical limitations as supported by the medical evidence and the ALJ accounted for time that she would require a break or would be off task due to pain. *Id.* The ALJ explicitly asked the VE, "has your testimony today been in accordance with the [DOT]…?" R. at 51. The VE testified that she believed it was and indicated that off task tolerance is not addressed in the DOT, but that her answer was based on her professional experience. *Id.* Therefore, the Court finds that the ALJ fulfilled his duty to resolve any conflict between the VE's testimony and the DOT. *Id.*

"The Commissioner need show only one job existing in the national economy that [claimant] can perform." *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011); *see* 42 U.S.C. § 423(d)(2)(A); C.F.R. § 404.1566(b).[5] The Court thus finds that the ALJ satisfied his step five burden to show that there is work in the national economy that Plaintiff can perform.[6]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for remand to the Commissioner for further administrative proceedings is **DENIED**. The Commissioner's motion for judgement on the pleadings is **GRANTED**.

**SO ORDERED.**

Dated:    **September 26, 2023**
          **New York, New York**

                                        **ANDREW L. CARTER, JR.**
                                        **United States District Judge**

---

[5] Additionally, these jobs exist in significant numbers. Courts in this Circuit have "found that as little as 10,000 jobs can constitute a significant number for the purpose of a Step Five finding." *Diane D. v. Saul*, 5:18-CV-1146 (DJS), 2020 WL 1044136 at *6 (N.D.N.Y. March 4, 2020). "Others, in fact, have found that job numbers over 9,000 have been held to be significant." *Id.* (collecting cases).

[6] In her reply, Plaintiff, for the first time, argues that the job of document preparer is obsolete and therefore, she cannot perform this job. The Court finds that Plaintiff's argument is immaterial because the ALJ satisfied his burden by enumerating more than one job, that of a table worker and sorter, with 38,000 and 39,000 jobs available nationally, respectively. However, this Court urges the SSA to re-evaluate relying on this "obsolete" job in further proceedings. *See Kiiroja v. Comm'r of Soc. Sec.*, 525 F. Supp. 3d 412, 413 (E.D.N.Y. 2021) (internal quotations omitted) ("Once again, the Court finds that the position relied upon is obsolete, and again rejects the ALJ's unblinking acceptance of conclusory opinions by [the] vocational expert.")